# EXHIBIT E

Case 1:05-cv-00084-JJF    Document 57-6    Filed 03/06/2006    Page 1 of 20

Westlaw.

Not Reported in A.2d                                                                                     Page 1

Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

H
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
STATE of Delaware
v.
Anibal MELENDEZ Defendant.
Submitted Sept. 3, 2003.
Decided Dec. 19, 2003.

Upon Defendant's Motion for Post-Conviction Relief-Denied.

Marsha J. Epstein, Department of Justice, Wilmington, Delaware for the State of Delaware.
Anibal Melendez, Smyrna, Delaware, for Defendant.
David J.J. Facciolo, and Ramond D. Armstrong, Office of the Public Defender, Wilmington, Delaware, for the defendant.

OPINION

JURDEN, J.

I. *Introduction*

A. *Procedural Posture*

*1 On April 18, 2002, shortly before his capital murder trial was to begin, defendant Anibal Melendez ("defendant" or "Melendez") pleaded guilty to Murder Second Degree (as a lesser included offense of Murder First Degree), Assault Second Degree, Possession of a Firearm During the Commission of a Felony, and Possession of a Deadly Weapon by a Person Prohibited. The charges were related to an incident in which the defendant laid in wait for victim Andre Mercado and fired multiple gunshots into the victim's car, killing Andre Mercado and injuring Jasmine Pizzaro, a passenger in the car. Defendant Melendez avoided the possible imposition of the death penalty by accepting the plea agreement.

On June 14, 2002, this Court sentenced the defendant on the above charges to a total of forty-eight (48) years of incarceration at Level V. [FN1] On September 24, 2003, the defendant filed a *pro se* Motion for Reduction of Sentence. [FN2] The Court ordered a response from the State and subsequently denied the defendant's motion on December 3, 2002. Melendez did not file a direct appeal to the Supreme Court. Melendez next filed the instant *pro se* Motion for Post-Conviction Relief [FN3] on January 30, 2003, alleging ineffective assistance of counsel. After this Court ordered a response from the State and defendant's trial counsel, David J.J. Facciolo and Raymond Armstrong, trial counsel filed an affidavit in response to the defendant's allegations on June 2, 2003. [FN4] Counsel also submitted a Supplemental Affidavit on June 19, 2003. [FN5] The State of Delaware filed its Response to Defendant's Motion for Post-Conviction Relief on July 7, 2003. [FN6] The defendant then filed a Reply Brief to the State's Response on September 3, 2003. [FN7] Briefing is now complete and this matter is ripe for consideration. Before discussing the issues raised in Melendez's Motion for Post-Conviction Relief, the Court will address several other pending motions filed by defendant.

FN1. The Court imposed the following sentence:
*Murder Second Degree* (murder of Andre Mercado)-twenty (20) years at Level V.
*Possession of a Firearm During the Commission of a Felony* (semiautomatic machine gun)-twenty (20) years at Level V.
*Assault Second Degree* (assault of Jasmine Pizzaro)-eight (8) years at Level V, suspended after six (6) years for two years at Level IV, suspended after one year for one year at Level III.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                         Page 2
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

*Possession of a Deadly Weapon by a Person Prohibited*-eight (8) years at Level V, suspended after two (2) years for the balance at Level III, and to be flowed down at the discretion of the Department of Corrections.
See Sentencing Transcript ("S.T.") from June 14, 2002 (Docket No. 90), at pp. 45-46; Sentencing Order (Docket No. 79).

FN2. *See* Def.'s Motion for Reduction of Sentence (Docket No. 75, attached to Docket No. 76).

FN3. *See* Def.'s Memorandum of Law in Support of Rule 61 Post-Conviction Relief ("Def.'s Motion") (Docket No. 81).

FN4. *See* Trial Counsel's Affidavit ("Aff.") (Docket No. 91).

FN5. *See* Trial Counsel's Supplemental Affidavit ("Supp.Aff.") (Docket No. 101).

FN6. *See* State's Response to Defendant's Motion for Post-Conviction Relief (" State's Response") (Docket No. 102).

FN7. *See* Def.'s Reply Brief ("Reply Brief" ) (Docket No. 105).

B. *Defendant's Motions for Free Transcripts*

Days before filing his Motion for Post-Conviction Relief, the defendant filed several *pro se* Motions for Transcripts [FN8] that requested the transcripts of the grand jury proceedings and the sentencing hearing held on June 14, 2002. Melendez also filed a document entitled "Motion to Proceed In Forma Pauperis." Although his motion is titled "Motion to Proceed In Forma Pauperis," Melendez seeks only a free copy of the transcript from the grand jury proceeding and the sentencing.

FN8. *See* Docket No.'s 80, 81, 82, 83, and 87.

As the State correctly notes, grand jury proceedings are not recorded and therefore it is not possible to produce a transcript of the grand jury proceedings which resulted in the indictment. [FN9] Any suggestion that Melendez was not in fact indicted is without merit. The Indictment signed by the Grand Jury foreperson is part of the record. [FN10] Complete copies of the transcripts from both the plea colloquy [FN11] held on April 18, 2002 and the sentencing hearing [FN12] held on June 14, 2002 were attached to the State's Response. The defendant thus received, at no cost, these transcripts with the State's brief which was filed on July 7, 2003. Consequently, the defendant's motions seeking free transcripts are collectively DENIED as moot.

FN9. *See* State's Letter filed June 4, 2003 (Docket No. 99).

FN10. *See* Indictment by the Grand Jury filed on July 30, 2001 (Docket No. 3).

FN11. *See* Guilty Plea Colloquy transcript ( "Plea") from April 18, 2002 (Docket No. 86, also attached to the State's Response).

FN12. *See* Sentencing Transcript ("S.T.") from June 14, 2002 (Docket No. 90, also attached to the State's Response).

*2 Because the defendant claimed in a letter filed with the Court on August 12, 2003 that some information in the transcripts "was blackened out," [FN13] another complete copy of the transcript from the plea colloquy and the sentencing hearing shall be attached to defendant's copy of this Opinion. Based on the record, the Court doubts that defendant's copies of these transcripts were incomplete or redacted. [FN14] If any material information was omitted from the first copies, defendant will surely notify the Court.

FN13. *See* Defendant's Letter to the Court filed August 12, 2003 (Docket No. 104).

FN14. There are numerous copies of the State's Response and the accompanying

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 3

transcripts in the Court file. At least one of these copies has a very small blank spot on two pages, as if someone photocopied the document while two small post-it notes were affixed. On one copy in the Court file, the only two sections that are obscured include: (1) S.T. at p. 19, Line 22 to p. 20, Line 4; (2) Plea at p. 24, Line 5 to p. 25, Line 12. If the defendant's copies contain the same blank spots, then the defendant has suffered no prejudice because the few select words that were obscured fail to disclose anything that would entitle the defendant to relief. In any event, complete copies of both transcripts shall accompany defendant's copy of this Opinion.

C. *Summary of Defendant's Allegations*

Defendant Melendez asserts several grounds of ineffective assistance of counsel. Essentially the defendant claims that his trial counsel: (1) compelled him to accept the guilty plea by (a) making false assurances regarding defendant's sentencing outcome, (b) improperly involving defendant's family in the decision to accept the plea bargain and forcing the defendant to make his decision under duress, (c) having a conflict of interest which he failed to disclose, and this conflict made him less than zealous in his representation of the defendant, and (2) failed to investigate the initial police investigation, State's witnesses, crime scene, defendant's alibi and defendant's defense strategy.

II. *The Legal Standard for Claims of Ineffective Assistance of Counsel*

As the State concedes, [FN15] defendant's motion is not procedurally barred because it raises only claims of ineffective assistance of counsel and these claims have not been previously adjudicated. [FN16] Accordingly, this Court shall address defendant's substantive arguments.

FN15. "None of the procedural bars of Rule 61(i) apply to the instant matter."

State's Response at 2.

FN16. When analyzing a motion for post-conviction relief, the Court must first apply the procedural bars of Del.Super. Ct.Crim. R. 61(i) ("Rule 61") before considering the merits of the individual claims. *Younger v. State*, 580 A.2d 552, 554 (Del.1990) [citations omitted]. Normally, any ground for relief that was not asserted in the proceedings leading to the judgment of conviction is thereafter barred. Rule 61(i)(3). However, the procedural bars set forth in Rule 61(i)(1)-(4) may be overcome if the defendant establishes a colorable claim that there has been a "miscarriage of justice" under Rule 61(i)(5). A colorable claim of miscarriage of justice occurs when there is a constitutional violation that undermines the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction. This exception to the procedural bars is very narrow and is only applicable in very limited circumstances. A claim of ineffective counsel in violation of the Sixth Amendment to the United States Constitution, by its very nature, qualifies as such an exception. Under this exception, the defendant bears the burden of proving that he has been deprived of a "substantial constitutional right." *State v. Wilmer*, I.D. No. 9603002509, 2003 Del.Super. LEXIS 80 at *12-*13 (Del.Super. Feb. 28, 2003, amended March 12, 2003), *aff'd* 827 A.2d 30 (Del.2003).

Under the standard set forth in *Strickland v. Washington*, [FN17] the defendant must establish two factors in order to prevail on a claim of ineffective assistance of counsel. In the context of a guilty plea challenge, *Strickland* requires a defendant to show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's actions were so prejudicial "that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." [FN18] The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                                         Page 4
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

*Strickland* standard is highly demanding and, under the first prong of the test, there is a "strong presumption that the representation was professionally reasonable." [FN19] Under the second prong, the defendant must affirmatively prove prejudice. [FN20] To succeed on a claim of ineffective assistance of counsel, the defendant must not only make concrete allegations of cause and actual prejudice, he must also substantiate them. [FN21] As the United States Supreme Court has recognized, requiring a showing of "prejudice" from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel serves the fundamental interest in the finality of guilty pleas. [FN22]

> FN17. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
>
> FN18. *Somerville v. State,* 703 A.2d 629, 631 (Del.1997), citing *Albury v. State,* 551 A.2d 53, 60 (Del.1988) (quoting *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)); see also *Rose v. State,* 808 A.2d 1205 (Del. Oct.18, 2002).
>
> FN19. *Flamer v. State,* 585 A.2d 736, 753 (Del.1990).
>
> FN20. *Albury,* 551 A.2d at 60, citing *Strickland,* 466 U.S. at 693.
>
> FN21. *Younger v. State,* 580 A.2d 552, 556 (Del.1990); see also *Somerville v. State,* 703 A.2d 629, 632 (Del.1997).
>
> FN22. See *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Having carefully reviewed the briefs, affidavits, transcripts and the file in its entirety, this Court believes that an evidentiary hearing is not warranted or desirable. [FN23] The expanded record clearly indicates that the instant motion is without merit. As demonstrated below, defendant fails to satisfy either prong of the *Strickland* test. The defendant has not shown that his trial counsel's actions were unreasonable or that he suffered actual prejudice as a result of counsel's conduct. Accordingly, the defendant's Motion for Post-Conviction Relief is DENIED.

> FN23. See Del.Super. Ct.Crim. R. 61(h)(3) ("Summary disposition. If it appears that an evidentiary hearing is not desirable, the judge shall make such disposition of the motion as justice dictates."); see also *Rose v. State,* 808 A.2d 1205 (Del. Oct.18, 2002) ("It is within the discretion of the Superior Court to determine whether an evidentiary hearing is needed in a postconviction proceeding."), citing Del.Super. Ct.Crim. R. 61(h).

### III. *Defendant's Assertions of Ineffective Assistance of Counsel*

#### A. *Guilty Plea was Not Knowingly and Voluntarily Made*

##### (1) *Defense Counsel Made False Assurances Regarding Defendant's Sentencing Outcome*

*3 Melendez asserts that his trial counsel "falsely assured the defendant that he would receive fourteen (14) years [in prison] when in fact this Court sentenced him to forty-eight (48) years." [FN24] Defendant's motion relies heavily upon the Eighth Circuit case of *United States v. Goodman* [FN25] for the proposition that a guilty plea should be set aside if a defendant can prove that he entered the plea upon false assurances as to the sentence to be imposed. Melendez also asserts that his attorney indicated that a death sentence would be the ultimate outcome if the defendant proceeded to trial. [FN26]

> FN24. Def.'s Motion at 5.
>
> FN25. *United States v. Goodman,* 590 F.2d 705 (8th Cir.1979), cert. denied, 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Page 5

Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
(Cite as: Not Reported in A.2d)

(1979).

FN26. Def.'s Motion at 6.

Both trial attorneys did advise the defendant that they would urge the court to sentence him as close as possible to the mandatory minimum of fourteen years, [FN27] and they assured Melendez that "the plea bargain absolutely took the case out of the death penalty category." [FN28] However, Melendez's trial counsel state in their affidavits that they made no promise as to what Melendez's sentence would be, and they advised Melendez and his family that, if he went to trial, he "could" face the death penalty. Trial counsel did not tell Melendez and his family that he "would" lose at the penalty phase. [FN29] Trial counsel advised Melendez and his family that if a jury returned a guilty verdict, there was a "substantial chance" that the Court would impose the death sentence because the evidence establishing prior planning would weigh heavily against the defendant's arguments for mitigation. [FN30] Although this Court cannot predict the outcome of the penalty phase, trial counsel's concern was certainly reasonable and warranted. The substantial planning of the murder was one of the major reasons why this Court sentenced Melendez to a period of incarceration closer to the maximum rather than the minimum. [FN31]

FN27. Supp. Aff. at ¶ 1.

FN28. Aff. at ¶ 10.

FN29. Supp. Aff. at ¶ 4.

FN30. Supp. Aff. at ¶¶ 2, 4; *see also* Aff. at ¶ 10.

FN31. *See* Sentencing Transcript ("S.T.") from June 14, 2002 (Docket No. 90), at p. 34 Line 5-p. 37 Line 4. The following excerpt from the sentencing hearing reveals the premeditated and heinous nature of the crime and illustrates why defense counsel's advice was professionally reasonable:

The Court: ... the remorse you feel today in no way erases the fact that on April 28, 2001, you committed a cold-hearted, brutal, premeditated execution of Andre Mercado, and you almost or could have killed Jasmine Pizzaro, over a used car. You murdered your self-described best friend, your brother, the son and brother of a family that took you in like their own, fed you, sheltered you, trusted you, and loved you. You assaulted and could have killed a woman whose father you worked for, who had given you a job, who trusted you.
And I think it's important to note that you did all this after substantial planning. And I say that because I've carefully reviewed the record, and I'm impressed by the following facts relating to the preparations you and others made to kill Mr. Mercado.
You tried to obtain a gun and ultimately were successful in not only obtaining a gun, but a semiautomatic machine gun. You purchased ammunition for that gun. You looked for gloves, and when you couldn't find them, you had someone go buy them. You dressed in black. You wiped the weapon clean of fingerprints to avoid detection. You cleaned the bullets too, just in case.
You identified where the victim was going to be and knew where his car was on the night of the execution. You drove by his car repeatedly. You parked across the street and laid in wait for at least ten to twenty minutes. You stole a vehicle in anticipation of this heinous crime with the intent of burning it afterwards, again, to hopefully avoid detection. You got high, and then you got out of the car, and you went over, and you blew him away.
Even though you knew it wasn't the right thing to do. Even though the whole stupid thing started over a used car. Even though there was an innocent person in the car next to him who had nothing to do with your dispute.
And then, as if that wasn't bad enough, you abandon the stolen car. You make sure it's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 6
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

on fire to try to destroy the evidence. You get rid of your clothes and then take a bath, presumably, to destroy the evidence. You get rid of the murder weapon, and then you watch a movie. You try to persuade at least one witness to not cooperate with the police and not testify. You threaten her and the safety of her children. You ask someone else to make up an alibi for you.

*The Record Clearly Reflects that Melendez's Guilty Plea Was Knowing and Voluntary: Defendant Has Burden, Guilty Plea Presumed Truthful*

As the Delaware Supreme Court stated in *Somerville v. State:* FN32

> FN32. *Somerville v. State,* 703 A.2d 629 (Del.1997).

There are numerous protections afforded to the defendant offering a guilty plea. Prior to accepting a guilty plea, the trial judge must address the defendant in open court. The judge must determine that the defendant understands the nature of the charges and the penalties provided for each of the offenses. The record must reflect that the defendant understands that the guilty plea constitutes a waiver of a trial on the charges and a waiver of the constitutional rights to which he or she would have been entitled to exercise at a trial. The trial judge must also determine that a guilty plea is not the result of force, threats, or promises apart from the plea agreement. i.e., is voluntary. FN33

> FN33. *Id.,* 703 A.2d. at 631-632, citing, *inter alia,* Del.Super. Ct.Crim. R. 11 (other internal citations omitted).

"With or without the witness oath, a defendant's statements to the Superior Court during the guilty plea colloquy are presumed to be truthful." FN34 The defendant's representations at the plea colloquy, as well as any findings made by the judge accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." FN35 The transcript from Melendez's guilty plea colloquy reveals that the requirements mentioned in *Somerville* are met here. FN36

> FN34. *Id.,* 703 A.2d at 632, citing *Davis v. State,* 1992 Del. LEXIS 428, ORDER, Walsh, J. (Del. Dec. 7, 1992) (other citation omitted).

> FN35. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977), *quoted in Somerville,* 703 A.2d at 632.

> FN36. *See generally,* Plea.

*4 Melendez contends that his attorney promised him that his sentence would not exceed fourteen (14) years of incarceration. But Melendez indicated on the **Truth-in-Sentencing** Guilty Plea Form (" TIS Form") that he understood that he faced a statutory penalty of: ten (10) to twenty (20) years incarceration at Level V for Murder Second Degree, three (3) to twenty (20) years at Level V for Possession of a Firearm During the Commission of a Felony, zero (0) to eight (8) years at Level V for Assault Second Degree, and zero (0) to eight (8) years at Level V for Possession of a Firearm by a Person Prohibited. The TIS Form reviewed, understood and signed by Melendez also specifies that he faced a "total consecutive maximum penalty" of fifty-six (56) years of incarceration at Level V, with a fourteen (14) year minimum mandatory. FN37

> FN37. *See* TIS Form; *see also* Plea at pp. 13-14 (where the record indicates that the Court asked Melendez if he carefully reviewed, understood and signed the TIS Form).

The Delaware Supreme Court has recognized that " the maximum possible sentence is the most important consequence of a guilty plea ." FN38 Not only did Melendez sign the TIS Form which indicated his maximum sentence, but during the plea colloquy, the Court specifically told Melendez that the statutory penalty provided for up to fifty-six

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                         Page 7
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

(56) years of incarceration. [FN39]

> FN38. *Allen v. State,* 509 A.2d 87, 88 (Del.1986).
>
> FN39. The transcript of the plea colloquy reveals the following exchange between Melendez and the Court:
> The Court: The total minimum mandatory penalty that you are facing is 14 years incarceration. Do you understand that?
> The Defendant: Yes, Your Honor.
> The Court: The total maximum penalty that you're facing is 56 years of incarceration. Do you understand that?
> The Defendant: Yes, Your Honor.
> The Court: Has anyone promised you what your sentence will be in this case?
> The Defendant: No, Your Honor
> Plea at p. 18, Lines 2-12.

Melendez acknowledged during the plea colloquy that the plea agreement was the entire agreement between himself and the prosecution, [FN40] and he specifically denied that anyone had threatened or forced him to plead guilty or promised him anything to induce his guilty plea. [FN41] The defendant also confirmed that: (1) he was entering the guilty plea freely and voluntarily, [FN42] (2) he was in fact guilty of each of the charges to which he was pleading guilty, [FN43] and (3) he had been afforded sufficient time to review the plea carefully with his counsel. [FN44] This last fact is supported by defense counsel's remarks made in front of the defendant at the plea hearing, [FN45] and by the affidavits of Melendez's trial attorneys in which they affirm that they thoroughly reviewed the TIS Form with Melendez the day before entry of the plea as well as the day of the plea colloquy. [FN46] Furthermore, Melendez acknowledged to the Court that he had read and understood the **Truth-in-Sentencing** Guilty Plea Form, discussed the matter fully with his counsel, and was satisfied with his attorneys' representation. [FN47]

> FN40. *See* Plea at p. 16, Lines 4-12.
>
> FN41. *See* Plea at p. 22, Lines 12-21 (excerpt below); *see also* TIS Form; *Somerville,* 703 A.2d 629.
> The Court: Has anyone threatened you or coerced you in any way to enter these pleas of guilty?
> The Defendant: No, Your Honor.
> The Court: You're doing so of your free will because you believe it's in your best interest to do so?
> The Defendant: Yes.
> The Court: Are you satisfied with the representation of your attorney?
> The Defendant: Yes, Your Honor.
>
> FN42. *See* Plea at p. 26, Lines 1-8.
>
> FN43. *See* Plea at pp. 22-25.
>
> FN44. *See* Plea at pp. 13-14.
>
> FN45. *See* Plea at pp. 5-9.
>
> FN46. *See* Aff. at ¶ 21.
>
> FN47. *See* Plea at pp. 13-14; p. 22, Lines 19-21.

"In the absence of clear and convincing evidence to the contrary," Melendez is bound by his answers on the **Truth-in-Sentencing** Guilty Plea Form and by his answers during the plea colloquy. [FN48] Indeed, "a defendant's bald statements that simply contradict what he said at his **plea** allocution are not sufficient grounds to **withdraw** the **guilty plea**. Nor should they be permitted to vacate a guilty plea after sentence has been imposed." [FN49] The substance of the defendant's assertions are completely belied by his responses to the Court's clear and specific questions. His assertions are also contradicted by the express terms of the plea agreement and the TIS Form that the defendant read, understood and signed. [FN50]

> FN48. *Somerville,* 703 A.2d at 632, citing *Fullman v. State,* 560 A.2d 490, ORDER (Del. Feb. 22, 1989); *see also, Evans v. State,* 795 A.2d 667, ORDER, J. Walsh

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 8
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

(Del. April 17, 2002) (requiring clear and convincing evidence); *Coverdale v. State,* 788 A.2d 527, ORDER, J. Holland (Del. Jan. 15, 2002) (also utilizing the clear and convincing evidence standard).

*Compare Patterson v. State,* 684 A.2d 1234 (Del.1996). In *Patterson,* The Delaware Supreme Court allowed a defendant to **withdraw** his **guilty plea** *prior to sentencing* under Del.Super. Ct.Crim. R. 32(d). The *Patterson* Court specifically noted that after sentencing a **plea** may be set aside only by motion under Rule 61, and that "Rule 32(d), as opposed to Rule 61, contemplates a lower threshold of cause sufficient to permit **withdrawal** of a **guilty plea**...." *Id.,* 684 A.2d at 1237. Moreover, in granting Patterson's motion to **withdrawal** his **guilty plea**, that Court based its decision on numerous facts that are not present in Melendez's situation. For example, in *Patterson* the defendant's attorney never reviewed the elements of any of the charges, *Id.* at 1235, the State conceded that defense counsel's initial advice to his client on **sentencing** was erroneous, the Court found that this error was compounded by the defendant's lack of opportunity to confer with his attorney once the error was discovered, and the **Truth-in-Sentencing** plea form signed by Patterson was "inconsistent on its face." *Id.* at 1238. None of these circumstances exist in the Rule 61 motion filed by Melendez.

FN49. *Benigno v. United States,* No. 03-CV-1603 2003 U.S. Dist. LEXIS 16132, at *16-17 (E.D.N.Y. September 16, 2003), citing *United States v. Hirsch,* 239 F.3d 221, 225 (2nd Cir.2001) (other citations omitted).

FN50. *See* **Truth**-in-**Sentencing** Guilty Plea Form and the Plea Agreement executed on April 18, 2002 (Docket No. 72). In pertinent part, the TIS Form signed by Melendez reveals the following questions and answers:

-Have you freely and voluntarily decided to plead guilty to the charges listed in your written plea agreement? (Melendez checked "Yes.")
-Have you been promised anything that is not stated in your written plea agreement? (Melendez checked "No.")
-Has your attorney, the State, or anyone threatened or forced you to enter this plea? (Melendez checked "No.").
-Has anyone promised you what your sentence will be? (Melendez checked "No.").
-Are you satisfied with your lawyer's representation of you and that your lawyer has fully advised you of your rights and of your guilty plea? (Melendez checked "Yes.").
-Have you read and understood all the information contained in this form? (Melendez checked "Yes.")

*The Cases Relied Upon by Melendez Are Factually Distinguishable; Melendez is Not Entitled to a Hearing*

**\*5** Melendez relies on *Blackledge v. Allison,* [FN51] in which the United States Supreme Court held:

FN51. *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

[T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record that are wholly incredible. [However,] * * * the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable .... courts cannot fairly adopt a Per se rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                               Page 9
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment. [FN52]

> FN52. *Id.*, 431 U.S. at 73-75 (internal citations omitted).

Many of the circumstances that led the Supreme Court to determine that the defendant was entitled to at least an evidentiary hearing in *Blackledge* are not present in Melendez's case.

The *Blackledge* Court noted that under the North Carolina procedure afforded defendant: no transcript of the proceeding was made. The only record was a standard printed form. There is no way of knowing whether the trial judge in any way deviated from or supplemented the text of the form. The record is silent as to what statements Allison, his lawyer, or the prosecutor might have made regarding promised sentencing concessions. And there is no record at all of the sentencing hearing three days later, at which one of the participants might well have made a statement shedding light upon the veracity of the allegations Allison later advanced. [FN53]

> FN53. *Baker v. United States*, 781 F.2d 85, 89 (6th Cir.1986), citing 431 U.S. at 77.

Furthermore, the defendant in *Blackledge* was arraigned only 37 days after the Supreme Court recognized the legitimacy of plea bargaining, a process that had been shrouded in secrecy up until that time. [FN54]

> FN54. *Baker*, 781 F.2d at 89, citing *Blackledge*, 431 U.S. at 76-77 (noting that plea bargaining was finally legitimized by the decision in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)).

In a situation in which a defendant submits specific factual allegations not directly contradicted in the record of circumstances undermining his plea, further fact development would be required. This is not such a situation. Melendez's allegations are directly contradicted in the record and, thus, this case is manifestly distinguishable from *Blackledge*. On the record at the plea hearing, the Court told Melendez that he faced a maximum sentence of fifty-six (56) years incarceration. The Court inquired into his competence to plead and into his understanding of the plea process and the rights he would relinquish by giving up his right to a jury trial. The defendant firmly indicated during the plea colloquy that no promises had been made to him regarding his sentence, and the sentencing hearing was conducted on the record, so there is a transcript available for scrutiny. [FN55]

> FN55. *See Baker*, 781 F.2d at 89 n. 2 (" The *Blackledge* Court distinguished two circuit court cases, *United States v. Tweedy*, 419 F.2d 192 (9th Cir.1969), and *Lynott v. United States*, 360 F.2d 586 (3rd Cir.1966), on the ground that there was a record of the sentencing proceedings in those cases. 431 U.S. at 78 n. 15.").

*6 In addition to asserting that his guilty plea was involuntary, Melendez contends that he is at least entitled to an evidentiary hearing based on several older federal cases such as *United States v. Unger*, [FN56] *United States v. Goodman*, [FN57] and *United States v. Marzgliano*. [FN58] In *Unger*, the defendant also claimed that "her plea was involuntary because it was induced by counsel's misrepresentations as to what her sentence in fact would be." [FN59] The Eighth Circuit remanded the *Unger* case for an evidentiary hearing because the defendant's motion was very specific in indicating " exactly what statements were allegedly made to (her) and when, where and by whom the statements were made. The allegations [were] neither conclusory nor 'wholly incredible' in the face of the record." [FN60]

> FN56. *United States v. Unger*, 665 F.2d 251 (8th Cir.1981)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=A00558000000114700...    3/3/2006

Not Reported in A.2d                                                                                                      Page 10
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

FN57. *United States v. Goodman*, 590 F.2d 705 (8th Cir.1979).

FN58. *United States v. Marzgliano*, 588 F.2d 395 (3rd Cir.1978).

FN59. *Unger,* 665 F.2d at 254.

FN60. *Unger,* 665 F.2d at 253-254.

Based on the record, the Court finds that Melendez's assertions are not credible and the cases cited by Melendez are distinguishable. It is important to note that the Supreme Court case of *Machibroda v. United States,* FN61 which is referred to in *Unger,* involved a motion to vacate sentence under 28 U.S.C. § 2255. FN62 This particular federal statute utilizes language that is quite different from Delaware Superior Court Criminal Rule 61. The Delaware rule governing post-conviction relief motions allows for the Court to expand the record, FN63 but it also specifically states that after considering all the materials in the expanded record, "the judge shall determine whether an evidentiary hearing is desirable.... If it appears that an evidentiary hearing is not desirable, the judge shall make such disposition of the motion as justice dictates." FN64

FN61. *Machibroda v. United States,* 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

FN62. 28 U.S.C. § 2255 provides in part: " Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, *grant a prompt hearing thereon,* determine the issues and make findings of fact and conclusions of law with respect thereto." *Machibroda,* 368 U.S. at 494, n. 3 (emphasis added). Although *Machibroda* was decided in 1962, this language from Section 2255 remains the same in 2003.

FN63. Del.Super. Ct.Crim. R. 61(g).

FN64. Del.Super. Ct.Crim. R. 61(h).

Furthermore, in determining that Melendez is not entitled to a hearing after a thorough review of the expanded record, this Court has considered the cases cited by defendant in which a hearing was granted. Those cases are factually distinguishable in *Machibroda,* the Supreme Court noted that when the defendant appeared for sentencing, "[d]uring the course of the proceedings the judge inquired if counsel had any statement to make, but did not direct any similar inquiry to the petitioner personally." FN65 Here, Melendez was provided the opportunity to speak at his plea colloquy FN66 and his sentencing hearing. FN67 In *Machibroda,* the defendant alleged that when the prosecutor made promises about what sentence would be imposed, that prosecutor cautioned the defendant not to tell his lawyer about the conversations and said that if the defendant "insisted on making a scene," certain other robberies would be added to the petitioner's difficulties. FN68 In contrast, Melendez has not alleged that he was instructed to conceal or lie about what he was told regarding his sentence. In *Machibroda,* "the District Court did not proceed in conformity with the provisions of 28 U.S.C. § 2255 when it made findings on controverted issues of fact without notice to the petitioner and without a hearing." FN69 Here, Melendez was given notice, FN70 and filed a Reply Brief after reviewing the State's brief, the transcripts and trial counsels' affidavits, and the Court reviewed his Reply Brief.

FN65. *Machibroda,* 368 U.S. at 488.

FN66. *See, e.g.,* Plea at p. 25, Line 17-p. 26 Line 8.

FN67. *See* S.T. at pp. 25-33.

FN68. *Id.* at 489-490.

FN69. *Id.* at 494 (emphasis added).

FN70. Melendez's Reply Brief indicates that he received the State's Response and trial counsels' affidavits, and in a letter

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                          Page 11
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Melendez acknowledged receipt of the transcripts. *See* Def.'s Reply Brief; Def.'s Letter to the Court filed August 12, 2003 (Docket No. 104).

*7 Melendez relies heavily upon the Eighth Circuit case of *United States v. Goodman* [FN71] in support of his claim that he is entitled to relief based on his counsel's alleged promised that he would only receive a fourteen year sentence. In *Goodman*, the defendant claimed that he was induced to plead guilty because of false assurances on sentencing given to him by a Deputy United States Marshall and a probation officer. The Eighth Circuit held, "if Goodman were able to prove that such assurances were given, and that he relied on them in making his decision to plead guilty, then he would be entitled to relief under section 2255. In this event his guilty plea should be set aside as not being the product of his free and willing choice." [FN72] It is important to note that while the Eighth Circuit remanded the *Goodman* case for an expansion of the record, it did not hold that defendant Goodman was entitled to an evidentiary hearing. [FN73] There is another significant factual distinction. Although Goodman's probation officer produced an affidavit in which he denied making the statements attributed to him by Goodman, "no affidavits by the United States Marshall were offered, and apparently Goodman was not provided an opportunity to counter the probation officer's affidavit or to explain his reasons for failing to do so...." [FN74] The *Goodman* court stated that when a defendant claims that he relied on false sentencing promises in pleading guilty, " [t]hese contentions standing alone should generally not be given great weight." [FN75] In the instant case, Melendez's assertions have been sufficiently countered by the State's Response and by very thorough affidavits filed by his former attorneys. In addition, Melendez was given ample time to respond to these affidavits and he in fact did so by filing a Reply Brief. Despite Melendez's argument that he should be entitled to an evidentiary hearing, after having ordered a significant expansion of the record and having carefully scrutinized the briefs, affidavits and transcripts, this Court finds that an evidentiary hearing would not be desirable at this stage, [FN76] especially in light of well established Delaware case law holding that a defendant's statements during a guilty plea colloquy are presumed to be truthful "absent clear and convincing evidence to the contrary." [FN77]

FN71. 590 F.2d 705 (8th Cir.1979).

FN72. *Id.* at 711-712.

FN73. *Id.* at 712 ("Following the Supreme Court's mandate in *Blackledge v. Allison, supra,* we are unable to sustain the dismissal of Goodman's section 2255 motion without further proceedings. His allegations of false assurance by government officials are not conclusory and wholly incredible on the face of the record. This is not to say that on remand a full evidentiary hearing will be necessary.").

FN74. *Id.* at 713.

FN75. *Id.* at 711.

FN76. *See* Del.Super. Ct.Crim. R. 61(h); *Rose v. State,* 808 A.2d 1205 (Del. Oct.18, 2002); footnote 23, *supra.*

FN77. *See Evans; Coverdale; Somerville.*

The case of *United States v. Marzgliano* [FN78] is also factually distinguishable. *Marzgliano* involved a federal claim under 28 U.S.C. § 2255 in which the defendant alleged that his attorney made false representations about sentencing which induced his guilty plea. In *Marzgliano* the defendant asserted that before the plea hearing he was advised by his attorney "to say yes to all questions asked by the judge." [FN79] Melendez has made no such allegation here. In addition, a co-defendant in *Marzgliano* submitted an affidavit in support of the defendant's motion, and most notably a "crucial" affidavit was filed by a member of the New York Bar who originally represented the defendant before withdrawing due to a potential conflict. [FN80] In this "crucial" affidavit, the affiant stated that he was present when trial counsel promised the defendant that if he pleaded guilty he would receive a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 12
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
(Cite as: Not Reported in A.2d)

particular sentence. FN81 Melendez's assertions are not supported by the sworn statements of an officer of the Court, but rather, his assertions are completely contradicted by his trial attorneys who are officers of the Court. FN82

> FN78. *Marzgliano,* 588 F.2d 395 (3rd Cir.1978).
>
> FN79. *Id.* at 397.
>
> FN80. *Id.* at 398.
>
> FN81. *Id.*
>
> FN82. The Preamble to the Delaware Lawyers' Rules of Professional Conduct states that a lawyer is "an officer of the legal system," and Rule 3.3, entitled "Candor toward the tribunal," states in pertinent part: "A lawyer shall not knowingly make a false statement of a material fact or law to a tribunal." Del. Rules of Prof'l Conduct R. 3.3(a)(1).

*8 A thorough review of the expanded record reveals that Melendez has failed to provide clear and convincing evidence in support of his allegation that he was promised a shorter sentence. In order to prevail on his claim that his guilty plea was involuntary due to his attorney's improper advice, Melendez is required to show that, but for counsel's error, he would not have pleaded guilty and would have insisted on going to trial. FN83 Melendez fails to meet this standard. The record, including the transcript of the plea colloquy, reveals no error on the part of his trial counsel and no indication that Melendez's guilty plea was involuntary. The defendant acknowledged in open court and on the TIS Form that he was fully aware that his sentence could range from fourteen (14) years to fifty-six (56) years, and the sentence he received of forty-eight (48) years is within that range. Thus, Melendez has failed to demonstrate that any alleged errors on the part of his counsel resulted in prejudice to him. FN84 In the absence of clear and convincing evidence to the contrary, this Court accepts the defendant's representations during the plea colloquy to be true and finds that Melendez knowingly, intelligently and voluntarily entered his guilty plea. FN85

> FN83. *Rose; Somerville; Albury.*
>
> FN84. *See Rose.*
>
> FN85. Compare to the facts in *MacDonald v. State,* 778 A.2d 1064 (Del.2001), where the Delaware Supreme Court declared that MacDonald's guilty plea was not informed and voluntary. In that "highly unusual case," *Id.* at 1076, numerous factors led the Court to its conclusion including, *inter alia,* the defendant's accelerated sentencing process on a separate case, defendant's placement in solitary confinement for four days just before the presentation of the non-negotiable plea "bargain," counsel's lack of investigation, and defendant's surrendering of viable appeal and postconviction remedies as part of the plea without any direct benefit secured in return. One of MacDonald's attorneys even admitted that he did not offer professional advice to MacDonald as to whether he should accept the plea offer. *Id.* at 1075-76. Those factors are not applicable to defendant Melendez, with the possible exception of his bald assertion that counsel failed to investigate, which is factually unsupported.

*(2) Defense Counsel, Without Consent, Involved Defendant's Family in the Plea Decision, and Forced Him to Take the Plea Under Duress*

Melendez also argues that he was forced to take the plea under duress and that his trial counsel improperly involved the defendant's family in an effort to coerce him into accepting the plea bargain. The claims of duress are sporadically interwoven into his main argument that he was promised a fourteen year sentence. Specifically, Melendez asserts that:
• "counsel was ineffective in allowing Defendant to place an involuntary plea under duress...." FN86

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 13

Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
(Cite as: Not Reported in A.2d)

FN86. Def.'s Motion at 3, 4.

• during the plea negotiations his trial counsel pressured him into "making a decision that he was not prepared for." FN87

FN87. *Id.* at 5.

• "it was counsel's [strategy] to pressure my family, so [they could] convince me to take the plea." FN88

FN88. Def.'s Reply Brief at ¶ 5.

• "... without Defendant's knowledge, Defendant's family was brought in to confer in attempts to sway the Defendant's decision. It was at that time that counsel told the Defendant's family that if he did not accept the plea bargain, he would get the death penalty." FN89

FN89. Def.'s Motion at 5.

• counsel violated Rule 1.6 of the Rules of Professional Conduct FN90 because Melendez " never authorized counsel to notify his family of his misapprehensions in accepting the original plea offer. To the contrary, the Defendant's familial involvement only placed the Defendant under more severe duress as to the actual decision." FN91

FN90. Rule 1.6 of the Delaware Lawyers' Rules of Professional Conduct, entitled " confidentiality of information," states in pertinent part: "(a) A lawyer shall not reveal information relating to the representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation...." Del. Rules of Prof'l Conduct R. 1.6(a).

FN91. Def.'s Motion at 6; *see also* Def.'s Reply Brief at ¶ 4.

• "The evidence picture counsel showed to me, it was some bloody picture of the victim's head bleeding against the steering wheel at the scene .... and yelling at me, to take responsibility of the damage I have cost with the picture in his hands and he became even more angry at me, when I told him I didn't do it." FN92

FN92. Def.'s Reply Brief at ¶ 7.

• "... counsel invited the visit from my family without my knowledge because I refused to take the plea and counsel intended to persuade my family for hours for them to convince me that it was better [to receive] 14 years [than] the death penalty 'based on counsels' advice." ' FN93

FN93. *Id.* at ¶ 8.

• "counsel send [sic] Dr. Ferreira to convince me to take the plea." FN94

FN94. *Id.* at ¶ 9. Dr. Pedro Ferreira is an Hispanic psychologist who interviewed the defendant and helped establish that while Melendez often speaks Spanish, he thinks primarily in English and therefore he was able to read and understand the plea agreement and TIS Form. *See* Plea at p. 10, Lines 1-6. Defendant's allegation regarding Dr. Ferreira is not supported by any facts and was raised for the first and only time in defendant's Reply Brief.

These conclusory allegations are factually unsupported. Melendez's claim that he was "unaware " of trial counsel's effort to arrange a visit between the defendant and his family is not credible. When the Court permitted Melendez to meet with his family inside the courthouse, he did not object or refuse to meet with them. Melendez never complained about his family's involvement during the plea colloquy or sentencing hearing. Melendez's trial counsel affirmed that he "obtained permission to have the client see his mother from Puerto Rico and other key family members ... to facilitate a full discussion of his decision." FN95 Additionally, in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                     Page 14
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

his affidavit, trial counsel stated that Melendez's meeting with his family:

> FN95. Aff. at ¶ 14.

... was not an attempt at pure manipulation of the defendant as suggested in the defendant's Rule 61 Motion. The defendant was informed from the beginning that we would attempt to facilitate such visits from his family so he could make a balanced decision whether to accept the plea or undergo the risk associated with the trial and the possible penalty phase. [FN96] ... Counsel however explicitly advised his client even after the meeting with his family that he must consider primarily legal reasons for the decision to accept or reject the plea. [FN97]

> FN96. Aff. at ¶ 15; see also Supp. Aff ¶ ¶ 6-8.
>
> FN97. Aff. at ¶ 17; see also Plea at p. 8, Lines 7-8 ("... the legal factors are the reasons he's entering this plea.").

Given the circumstances, including the serious possibility that the defendant might receive the death penalty, the Court does not find that trial counsel's decision to arrange a meeting between Melendez and his family was professionally unreasonable.

Even if the Court determined that trial counsel acted unreasonably, the defendant's particular assertions about his family are unsupported by any facts that would indicate precisely how the involvement of the Melendez family created any actual prejudice. In order to establish "prejudice," Melendez must show "that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." [FN98] Melendez fails to establish that if his family had not been involved, he would have insisted on going to trial.

> FN98. *Somerville*, 703 A.2d at 631, quoting *Hill v. Lockhart*, 474 U.S. 52, 58,

106 S.Ct. 366, 88 L.Ed.2d 203.

The defendant's blanket claims of duress not only fail to establish unreasonable conduct by his attorneys, they fail to substantiate any prejudice. Most notably, as defendant's Rule 61 Motion concedes, once the Court determined that the death penalty was applicable, "[o]bviously such a decision placed the defendant under duress and the defendant sought a plea bargain to bypass a possible death conviction." [FN99] Thus, Melendez admits that the Court's decision to proceed with the death penalty is what actually "placed the defendant under duress." Melendez's own criminal conduct raised the possibility of the death penalty and he cannot blame his attorneys for creating the duress that necessarily accompanies such a possibility.

> FN99. Def.'s Motion at 4-5.

Melendez's claims might warrant an evidentiary hearing if his own statements during the plea colloquy and sentencing hearing did not wholly contradict the allegations in his Rule 61 Motion. For example, during sentencing, Melendez spent several minutes explaining his remorse over the pain he caused the victims and their families. [FN100] From defense counsel's remarks, which were expressed in front of Melendez at sentencing, it appears that it was not so much the involvement of the defendant's family that induced the decision to plea as it was Melendez's desire to spare the victim's families from reliving the horror of the crime during the course of a trial. [FN101] Defense counsel has credibly represented that the legal factors were the primary reasons that defendant entered the plea, [FN102] along with sympathy for the victim's family, [FN103] and Melendez himself admits that he entered a plea to avoid the possible imposition of the death penalty. [FN104]

> FN100. *See* S.T. at pp. 25-33.
>
> FN101. *See* S.T. at p. 9, Lines 17-p. 10, line 4; p. 16, lines 17-19; *see also*, Aff. at ¶ 24.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                                Page 15
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

FN102. Plea at p.8, Lines 3-8

FN103. Plea at p. 7 Line 19-p. 8 Line 2.

FN104. Def.'s Motion at 4-5; *see* footnote 99 *supra*.

The transcripts reveal no signs of distress. During the plea colloquy and the sentencing hearing, Melendez failed to mention any concern with the representation afforded by his trial counsel or his family's involvement in his decision to accept the plea. At sentencing, Melendez spoke for a long time in a cogent, calm and sincere manner. [FN105] His delivery, demeanor, tone and body language reflected a sense of relief and absolutely no sign of duress. He expressed sorrow for the victims and their families and he apologized for his actions. Although the Court provided Melendez with ample opportunity to address the Court during the plea colloquy and the sentencing hearing, at no time did he provide any indication that he was under duress or that his plea was involuntary, coerced or unknowing. In light of the above, the Court finds that Melendez is not entitled to post-conviction relief on this ground.

FN105. Melendez's speech during his sentencing hearing goes on for nine (9) pages in the transcript. *See* S.T. at pp. 25-33.

**(3) *Defense Counsel Failed to Disclose a Conflict of Interest that Affected His Ability to Zealously Represent the Defendant***

Defendant asserts that one of his appointed trial attorneys, Mr. Facciolo, had an ongoing conflict of interest because he "... had a working relationship with the victim an [sic] *his* family...." [FN106] The defendant apparently bases this assertion on his belief that "Counsel Facciolo at numerous points and at various times has represented the victim and the family of the victim." [FN107] Melendez argues that as a result of this conflict, Mr. Facciolo "never placed any real interest to the disposition of this case." [FN108]

FN106. Def.'s Motion at 12 (emphasis on the identification of the male victim added).

FN107. *Id.*

FN108. *Id.*

Although Melendez mentions a conflict with a male victim, he fails to allege trial counsel's conflict with anyone in Andre Mercado's family. Mr. Facciolo's affidavits shed more light on this claim:

9. Counsel informed and discussed with the defendant the possibility of a "conflict of interest" involving David J.J. Facciolo, Esquire's acquaintanceship/friendship with Jasmine Pizzaro's mother. The defendant was promptly informed by David J.J. Facciolo, Esquire, that counsel had realized after the entry of the plea, that he was a friend/acquaintance of the mother of one of the victims, Jasmine Pizarro. He realized this because he saw the mother in the hallway of the Court and she commented about the case as described in footnote 6 of Counsel's original submission [on sentencing] to the Court. Counsel promptly asked the defendant if he felt this was problematic and explained the legal import of a "conflict of interest." Counsel did not know Jasmine Pizarro, herself, until he spoke to her briefly in the hallway of the Courthouse as described in footnote 6 of the original sentencing submission to the Court.

10. Upon learning of this acquaintanceship, David J.J. Facciolo, Esquire specifically visited the defendant to discuss this issue and discussed it with him on two separate respective occasions. Counsel incorporated this in their footnote to the submission to the court before it was published to the Court. The defendant agreed that counsel should stay on the case and that this did not concern him as a conflict. He agreed that this was of minor significance since it [the Assault charge] was not even the most serious charge he faced. Counsel thought it was part of the official record when counsel made their submission to the Court, as well as when they specifically incorporated the entirety of their sentencing submission to the Court by reference in the sentencing remarks at page 7 of the sentencing transcript. This could have been more clearly established on the record in hindsight. This was only one of a myriad of legal, factual,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                             Page 16
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

intellectual and emotional factors involved in the defendant's decision making process.

11. Lastly, the defendant's remarks directed to Jasmine Pizarro at pages 28 and 29 of the sentencing transcript also seem to belie any possibility of conflict. They show that he intelligently decided to plea guilty to the charge where she was a victim and they illustrate genuine remorse. There is no indication whatsoever of concern with his attorneys continuing to represent him, even though the charge with Jasmine Pizarro as a victim, was part of the plea agreement. [FN109]

>   FN109. Supp. Aff. at ¶¶ 9-11 (emphasis added); Defense Counsels' Sentencing Submission has been entered into the record under seal (Docket No. 109). In addition to discussing the potential conflict, this comprehensive document details the extraordinary effort put forth by the defendant's attorneys.

If the defendant could prove that his counsel was truly not acting as a zealous advocate due to an actual conflict of interest and that he was prejudiced because he would not have pleaded guilty if he had been aware of the conflict, then the defendant may be entitled to relief. However, in this case, Melendez's own statements during the plea colloquy and sentencing hearing, along with trial counsel's affidavits, strongly indicate that Mr. Facciolo was a zealous advocate, there was no real conflict of interest which undermined his representation of the defendant in this case, Mr. Facciolo discussed the potential appearance of a conflict with Melendez and the "defendant agreed that counsel should stay on the case and that this did not concern him as a conflict," [FN110] and Melendez told the Court at sentencing he was extremely satisfied with his attorneys, [FN111] and that he voluntarily pleaded guilty out of concern for Andre Mercado's family [FN112] and in order to avoid the death penalty. [FN113]

>   FN110. Supp. Aff. at ¶ 10.

>   FN111. See S.T. at p. 27, Lines 8-14; footnote 118 *infra*.

>   FN112. See S.T. at p. 9, Lines 17-p. 10, line 4; p. 16, lines 17-19; pp. 25-33; *see also*, Aff. at ¶ 24.

>   FN113. Def.'s Motion at 4-5.

In his affidavit, Mr. Facciolo states that he only realized that he knew Jasmine Pizzaro's mother *after* entry of the guilty plea. [FN114] As the State correctly points out in its brief, [FN115] even if trial counsel had a potential conflict, it did not affect his representation of the defendant up to and including the entry of Melendez's guilty plea because at that time trial counsel was completely unaware of the this possibility of a conflict. Furthermore, the record strongly indicates that the defendant's attorneys were very professional, prepared and diligent in their zealous representation of Melendez, and this finding is confirmed by this Court's observance of counsel's conduct throughout this case. The defense attorneys state that "both counsel spent between forty and sixty hours with Defendant reviewing ... each aspect of the State's case." [FN116] This claim is not disputed by the defendant in his Reply Brief, nor did Melendez dispute this claim when his counsel presented it at the plea hearing. The affidavits also set forth in great detail the extraordinary efforts exerted by the defense counsel on the defendant's behalf, including extra work performed at their request by an outside-retained lawyer from Puerto Rico named Raphael Anglada Lopez and their retention of an Hispanic psychologist named Dr. Pedro Ferreira. [FN117]

>   FN114. Supp. Aff. at ¶ 9.

>   FN115. See State's Response at 6-7.

>   FN116. Aff., at ¶ 9; Plea at p. 6, Lines 13-17.

>   FN117. See Aff. at ¶¶ 13, 19.

In fact, during his sentencing hearing, Melendez specifically took a moment to complement his trial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 17
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

counsel:
I would like to also thank my lawyers who have did [sic] the very best job in representing me, and the attentiveness they have been giving my case. Not only do you become friends, you have formed a loving relationship. Thank you for being there for me, my friend[s]. You have been my support. [FN118]

> FN118. *See* S.T. at p. 27, Lines 8-14.

Melendez asserts that he did not know about the "conflict of interest" concerning Mr. Facciolo until after sentencing. [FN119] Melendez also denies counsel's statement that they discussed the possibility of a conflict on two separate occasions. [FN120] However, in his Reply Brief, Melendez does not refute counsel's statement that Mr. Facciolo was not even aware that he knew Jasmine Pizzaro's mother until after the plea had been entered. Accordingly, the defendant has failed to establish that he suffered actual prejudice because he has not shown that this potential conflict caused him to plead guilty.

> FN119. Def.'s Reply Brief at ¶ 5.
>
> FN120. *Id.*

### B. *Trial Counsel Failed to Do an Adequate Investigation and Failed to Properly Prepare a Defense*

Throughout defendant's argument that he was prejudiced by his attorney's alleged conflict of interest, and as a separate ground for relief, [FN121] Melendez avers that his trial counsel "failed to investigate defense witnesses, failed to investigate the crime scene nor perform a meaningful investigation in the totality of the case." [FN122] Melendez also claims that "Mr. Facciolo did not fully comport with the discovery rule in retrieving all possible relevant information to establish a viable defense." [FN123] Melendez further claims that when he requested an investigator be assigned "to investigate any witnesses and the crime scene in general, counsel failed to act." [FN124] Most interestingly, Melendez states, "counsel did not establish a defense, *however minimal it would have been.*" [FN125]

> FN121. Def.'s Motion at 15-18; Def.'s Reply Brief at ¶ 6.
>
> FN122. Def.'s Motion at 12.
>
> FN123. *Id.*
>
> FN124. *Id.* at 13.
>
> FN125. *Id.* (emphasis added).

There is no factual basis to support any of these assertions. The Court notes that nothing in defendant's motion or the record in this case establishes in any way that trial counsel failed to properly investigate or failed to explore possible defense theories. In fact, at the plea hearing, defense counsel specifically mentioned his previous strategy of presenting a defense of extreme emotional distress, [FN126] and counsel outlined his exhaustive efforts in exploring possible defenses along with the large amount of time spent preparing the defendant's case. [FN127] Clearly, the record is replete with references to the substantial effort put forth by both defense attorneys. [FN128] After carefully reviewing the record and defense counsel's conduct, this Court is thoroughly satisfied that counsel's representation was professionally reasonable. [FN129]

> FN126. *See* Plea at p. 8, Lines 9-14; Aff. at ¶ 20.
>
> FN127. Plea at p. 8, Line 9-p. 9, Line 10.
>
> FN128. *See, e.g.*, Plea; S.T.; Aff.; Supp. Aff.
>
> FN129. *See Wilmer*, 2003 Del.Super. LEXIS 80 at *15 ("The Strickland standard is highly demanding and under the first prong of the test, there is a 'strong presumption that the representation was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 18
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

professionally reasonable." '), citing *Stone v. State,* 690 A.2d 924, 925 (Del.1996); *Flamer v. State,* 585 A.2d 736, 753 (Del.1990); *see also, Albury v. State,* 551 A.2d 53, 59 (Del.1988).

As mentioned previously, in contrast to his present contention, Melendez declared on his TIS Form that he was satisfied with his counsel's representation, [FN130] and at the plea colloquy he verbally acknowledged his satisfaction with trial counsel. [FN131] In the absence of clear and convincing evidence to the contrary, Melendez is bound by his signed statement on his plea form. [FN132]

FN130. *See* TIS Form (Docket No. 72).

FN131. Plea at p. 22, Lines 19-21.

FN132. *See Coverdalle; Somerville.*

The defendant's vague claims that counsel failed to investigate are not factually supported, thus Melendez has failed to meet his burden of proving that he was denied a "substantial constitutional right." [FN133] Moreover, by pleading guilty, defendant gave up his trial rights, including the right to present evidence on his own behalf and to challenge the charges against him; therefore, even if defendant's unsupported allegations regarding his attorney's conduct in preparing for trial are accepted as true, Melendez has not shown that the result of the proceedings would have been different but for his counsel's conduct. [FN134] Melendez's "voluntary plea of guilty constitutes a waiver of any defects or errors occurring prior to the entry of his plea." [FN135] He is not entitled to relief on these grounds.

FN133. *See Wilmer,* footnote 16 *supra.*

FN134. *See Coverdale,* ORDER at ¶ 6.

FN135. *Coverdale,* citing *Downer v. State,* 543 A.2d 309, 312-313 (Del.1988).

IV. *Conclusion*

There is no support for Melendez's allegations of ineffective assistance of counsel. There is no evidence in the record reflecting that his counsel's performance fell below an objective standard of reasonableness or prejudiced him. [FN136] In the context of Melendez's guilty plea, it is his burden to demonstrate that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial. [FN137] While Melendez argues now that his plea was involuntary and coerced, he provides no factual support for his claims and they are completely belied by the record.

FN136. *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984).

FN137. *Rose,* ORDER at ¶ 5; *Coverdale,* ORDER at ¶ 6 ("In the context of [defendant's] guilty plea, it is his burden to demonstrate that, but for counsel's alleged errors, he would not have pleaded guilty and would have insisted on going to trial."); *Somerville,* 703 A.2d at 631.

Obviously, the defendant is unhappy with the length of his sentence. But it was his own actions and admissions that placed him in this position. As this Court noted when it denied defendant's Motion for Reduction of Sentence, [FN138] in imposing this sentence the Court took into account, *inter alia,* the substantial planning before the murder and the destruction of evidence after the murder. [FN139] Under the circumstances, Melendez should be relieved that he only received forty-eight (48) years of incarceration and not the maximum of fifty-six (56) years for such a cold-blooded, premeditated crime. By entering into a plea agreement, the defendant avoided possible imposition of the death penalty. In sum, the Court finds that the "plea should be sustained on the ground that it was sought by defendant and freely taken as part of a bargain which was struck for the defendant's benefit." [FN140]

FN138. *See* this Court's Order entered December 3, 2002 (Docket No. 78).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                      Page 19
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

> FN139. *See* S.T. at p. 34 Line 5-p. 37, Line 4 (set forth in footnote 31 *supra* ); S.T. at pp. 45-46.

> FN140. *Downer v. State,* 543 A.2d 309, 312 (Del.1988), quoting *People v. Foster,* 19 N.Y.2d 150, 278 N.Y.S.2d 603, 225 N.E.2d 200, 202 (1967) (upholding a guilty plea to a nonexistent offense).

Trial counsel's affidavits, along with the defendant's verbal representations during the guilty plea colloquy and his written representations on the **Truth**-In-**Sentencing** Form, establish that Melendez voluntarily and knowingly entered his plea. Failing to produce clear and convincing evidence to the contrary, Melendez has failed to meet his burden of proving that he was promised any particular sentence or that he was coerced into entering the plea agreement. When measured against the expanded record, including trial counsel's detailed affidavits, the transcripts of the plea colloquy and the sentencing hearing, Melendez's allegations in his Motion for Post-Conviction Relief fail to substantiate that counsel's conduct was professionally unreasonable or that the defendant suffered any prejudice. As a result, defendant is not entitled to relief.

For the foregoing reasons, defendant's Motion for Post-Conviction Relief is DENIED.

IT IS SO ORDERED.

Del.Super.,2003.
State v. Melendez
Not Reported in A.2d, 2003 WL 23095688 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.